Michael S. Hiller (MH 9871)
Paul M. Kampfer (PK 9186)
Hiller, PC
Attorneys for Plaintiff
641 Lexington Avenue, 29th Floor
New York, New York 10022
Telephone: (212) 319-4000
Facsimile: (212) 753-4530
mhiller@hillerpc.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
ANTICIA MACALOU,                          :        Civ.
                                          :
              Plaintiff,                  :        **COMPLAINT**
                                          :
      -against-                           :        ECF Case
                                          :
FIRST UNUM LIFE INSURANCE COMPANY,        :
MCKINSEY & COMPANY, INC. PLAN, and        :
MCKINSEY & COMPANY, INC.,                 :
                                          :
              Defendants.                 :
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANTICIA MACALOU**, as and for her complaint against defendants, alleges as follows:

**PRELIMINARY STATEMENT**

1.      By this action, plaintiff Anticia Macalou ("Anticia") seeks to recover, pursuant to the

Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1001, *et.*

*seq.*, *inter alia*, the long-term disability benefits ("LTD Benefits") to which she is entitled under the

terms of an employee benefit plan issued to her through her employer, McKinsey & Company, Inc.

("McKinsey"), along with attorneys' fees, pre-judgment interest, and costs.

2.      As set forth below, until she became disabled, Anticia worked as an Expert Associate

Partner for McKinsey ("Regular Occupation"), a business consulting firm. She was thriving in her

Regular Occupation, and looked forward to future advancement at McKinsey. Unfortunately, Anticia's career was cut short in January 2021 by a series of serious medical conditions, including, *inter alia*: Major Depressive Disorder, Anxiety Disorder, Post-Traumatic Stress Disorder ("PTSD"), and Attention Decific/Hyperactivity Disorder ("ADHD") (collectively, "Medical Conditions").

3.      Anticia's Medical Conditions have left her with constantly disabling symptoms, which include, *inter alia*, anxiety; depression; panic attacks; shortness of breath; difficulty concentrating; attention difficulties; interrupted/atypical sleep; feelings of numbness/apathy; avoidance of work-related stimuli and high stress triggers (*e.g.*, her home office); feelings of guilt, shame, and low self-worth (*e.g.*, questioning her identity and value in her profession); anhedonia; disturbing dreams; increased eating; and difficulty getting out of bed/finding a reason to get out of bed (collectively "Disabling Symptoms"). Unable to continue working, Anticia filed a disability claim which defendants arbitrarily and capriciously denied in violation of federal law. As set forth below, with the exception of a brief failed attempt to return to work, Anticia, since January 20, 2021, has been, and continues to be, totally disabled under the McKinsey & Company, Inc. Plan ("Plan").

4.      Every physician and other treatment provider who has examined Anticia found her to be totally "Disabled" as defined by the Plan.

### PARTIES

5.      Anticia is a citizen of the State of New York, County of Westchester.

6.      At all relevant times, Anticia was and is a participant, within the meaning of §(3)(7) of ERISA, 29 U.S.C. §1002(7), in the Plan.

7.      Upon information and belief, defendant First Unum Life Insurance Company ("Unum") is an insurance company that is licensed to do, and conducts, business in the State of New

York, with a principal place of business located at 666 Third Avenue, Suite 301, New York, New York 10017.

8.    Upon information and belief, the Plan is fully funded and insured by Unum.

9.    Upon information and belief, Unum is, and at all relevant times herein has been, the claims administrator of the Plan within the meaning of Section 3(16)(A) of ERISA, 29 U.S.C. §1002(16)(A).

10.    Upon information and belief, Unum is, and at all relevant times herein has been, a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

11.    Upon information and belief, Unum is, and at all relevant times herein has been, a trustee of the Plan.

12.    Upon information and belief, defendant McKinsey & Company, Inc. Plan (*i.e.*, the Plan) is, and at all relevant times has been, an employee welfare benefit plan, as defined by §3(3) of ERISA, 29 U.S.C. §1002(3), with a principal place of business located at 711 Third Avenue, 4th Floor, New York, New York 10017.

13.    The Plan provides LTD Benefits to eligible plan participants in accordance with, and pursuant to, Group Policy No. 451355.

14.    Upon information and belief, defendant McKinsey & Company, Inc. is a domestic business corporation with a principal place of business located at 711 Third Avenue, 4th Floor, New York, New York 10017.

15.    McKinsey is listed as the "Plan Administrator" and named fiduciary under the Plan.

16.    Upon information and belief, McKinsey is, and at all relevant times herein has been, the policyholder, and an administrator, trustee and fiduciary of the Plan.

17.     Immediately prior to becoming disabled, Anticia was employed by McKinsey as an Expert Associate Partner.

18.     As an employee of McKinsey, Anticia was enrolled in the Plan.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this action pursuant to §502(e)(1) of ERISA, 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331, in that this is a civil action wherein the matter in controversy arises under the laws of the United States.

20.     This court has personal jurisdiction over the defendants, in that ERISA provides for nationwide service of process.  29 U.S.C. §1132(e)(2).

21.     Venue is proper in this district pursuant to ERISA §502(e)(2), 29 U.S.C. §1132(e)(2), because much of the conduct that is the subject of this lawsuit occurred within this District and multiple defendants conduct business within this District.

## STANDARD OF REVIEW

22.     This case is subject to *de novo* review because the Plan document does not contain an effective grant of discretionary authority to Unum.

23.     Even if the Plan document were to effectively grant discretionary authority to Unum, this case would still be subject to *de novo* review because Unum failed to comply with the Department of Labor's claims procedure regulations ("ERISA Claims Procedure Regulations"), and its failure to comply was neither inadvertent nor harmless.

24.     In addition, upon information and belief, Unum has not adopted claim procedures in accordance with the Department of Labor regulations.

25.     For these reasons, the case is subject to *de novo* review.

4

## CLAIM FACTS

*Anticia's Background, Education, and Work History*

26.     Prior to becoming disabled, Anticia led a busy, active, and fulfilling life; she had a zest for life, was high energy, socially active, and an extremely outgoing/extroverted person who easily made friends and quickly built professional relationships.  Anticia enjoyed, among other things, traveling; gardening; singing; designing and decorating her home; deep conversations with friends and family; creative writing; business writing; reading to learn and for pleasure; going out alone; and meeting new people.  She also maintained a rigorous workout schedule by going to the gym five to six times per week, and is a former triathlete.

27.     Prior to starting her career, Anticia graduated from Northwestern University with a Bachelor of Science degree in Industrial Engineering and Management Science.  Then, while working a full-time job, Anticia obtained a Masters of Science degree in Engineering Management from George Washington University.

28.     Immediately after graduating from college, Anticia commenced her rigorous and rewarding career.  She began by working as a software engineer and quickly worked her way up to become a software engineer Project Leader.  In 2001, Anticia shifted gears and began consulting-type work.  From 2001 through 2008, Anticia was the Executive Director and Chief Operating Officer of Circle of Friends, a provider of specialized behavioral health care services. Thereafter, Anticia founded and ran (*i.e.*, she was Chief Executive Officer) a handful of her own businesses.

29.     In early 2019, an opportunity presented itself: Anticia was recruited by McKinsey to work as one of its Expert Associate Partners (*i.e.*, her Regular Occupation).  Seeing a chance to further her career in consulting, Anticia accepted the job -- a position she held until her disability

began on January 20, 2021.

***Anticia's Regular Occupation***

30.    Anticia's Regular Occupation required her to work closely with high-ranking executives (*i.e.*, "C-Level Executives") at her client companies to completely reinvent their business models using cloud technologies, big data, advanced analytics, and machine learning.  She was responsible for, *inter alia*, providing clients with deep, specialized expertise in a function or industry, serving clients as Engagement Director ("ED") or Consulting Director ("CD") on studies, leading client development efforts, and materially advancing McKinsey's knowledge in her areas of expertise.  Specifically, among other things, this entailed:

- Playing a lead role on multiple client engagements simultaneously, either as ED (leading and ensuring quality of studies) or CD (contributing specialized expertise relevant to client problems or client relationships);

- Building counseling relationships with one or more C-Level executives and serving them across her areas of expertise;

- Leveraging expertise and working thematically with a wide range of clients;

- Leading client development, and shaping client agenda across many topics in her practice domain;

- Speaking publicly, delivering presentations to large groups of people, and playing instrumental roles in winning engagements "at the front of the room" for proposals (*i.e.*, excellent entrepreneurial capabilities);

- Driving and leading a successful "franchise" and building institutional capability in her areas of expertise;

- Ability to regularly perform full-time work, which often required weekend work and/or working 65+ hour weeks (she was required to be available close to 24 hours per day, 7 days per week); and

- Frequent travel both within the United States and internationally to meet and work with clients.

31.    Anticia's Regular Occupation requires very significant cognitive and non-exertional responsibilities, which are especially important given the nature of her disability and Disabling Symptoms (*e.g.*, depression, anxiety, panic attacks, difficulty with attention and concentration, sleep problems, anhedonia, feelings of guilt and low self worth, *etc.*). According to her job description and Vocational Expert Ashley Johnson, MS, CRC, CLCP ("Vocational Expert Johnson"), Anticia's cognitive and non-exertional vocational skill requirements included, without limitation:

- Ability to focus, pay attention, and concentrate for extended periods of time;

- Critical and analytical thinking, originality in problem solving, strong quantitative and analytical abilities, and flexibility;

- Mathematical, inductive, and deductive reasoning;

- Ability to collaborate, relate, and interact with multiple people including, *inter alia*, peers, supervisors, managers, colleagues, and clients on a daily basis through virtual platforms and in person;

- Strong attention to detail and ability to navigate key computer-based programs, including, *inter alia*, those involving the analysis, creation, and presentation of visual data and graphics;

- Providing, receiving, and responding to frequent targeted feedback regarding work performance;

- Strong problem-solving skills including the ability to disaggregate issues and develop hypotheses and actionable recommendations from data and analysis;

- Rapidly absorbing, analyzing, and grappling with a wide range of complex business issues and information;

- Oral expression and comprehension;

- Being an effective communicator, facilitator, presenter, coach;

- Good stress tolerance; and

- Regularly performing full-time work, which often requires weekend work and/or working 65+ hour weeks (collectively, "Cognitive Requirements").

7

32.     Despite the stressful and demanding nature of her Regular Occupation, Anticia loved it.  She enjoyed the challenges associated with her Regular Occupation and helping her clients solve their business problems to improve their companies.  Given her career accomplishments and vast experience, Anticia was on pace to become senior partner at McKinsey.  Unfortunately, Anticia's dreams ended in January 2021 when she was forced to stop working due to her Disabling Symptoms and Medical Conditions.

***Onset of Anticia's Disabling Symptoms, Medical Conditions, and Disability***

33.     Anticia suffers from Major Depressive Disorder, Anxiety Disorder, PTSD, and ADHD.

34.     Her Disabling Symptoms began to emerge in the summer of 2020, and at that time, included, *inter alia*, severe anxiety; panic attacks; shortness of breath; racing thoughts; an inability to sleep; and an inability to cope with the pressure at work.  Anticia began treatment for her Disabling Symptoms in August/September 2020, and shortly thereafter, her treating psychiatrist at that time recommended that she take some time off from work to focus on her treatment and mental health.  Realizing that she needed to focus on her health, Anticia accepted her physician's advice, stopped working, and took her first brief short term disability ("STD") leave from September 2020 through November 2020 ("First STD Leave").

35.     After undergoing psychiatric treatment during her First STD Leave, Anticia attempted to return to work in her Regular Occupation at the end of November 2020 ("First Failed RTW Attempt").  Unfortunately, this attempt to return to work was short-lived.

36.     Upon her First Failed RTW Attempt, Anticia's Disabling Symptoms quickly returned, and by the end of January 2021, her Disabling Symptoms were even more severe than when she took her First STD Leave.  In her affidavit, dated June 28, 2022 ("Affidavit"), Anticia explained:

8

> My disability came to a head on January 20, 2021 ("Disability Onset"). On that date, I was scheduled for a full day of meetings at work. I felt paralyzed. I was unable to call or show up for work; rather, I turned off all of my phones and stayed in bed all day. Needless to say, I missed all my meetings that day. Because McKinsey did not hear from me for 24 hours, as per company policy, they sent the police to my home to conduct a wellness check. In light of the news regarding various deadly police raids on innocent persons at that time, this act, although well meaning, further increased my anxiety and fears including of the stressful work environment associated with high level consulting jobs, such as my Own Occupation at McKinsey.

37.     As a result of her Disabling Symptoms, Anticia took her second STD leave from January 20, 2021 through July 20, 2021 ("Second STD Leave").

***Anticia's Claim for LTD Benefits***

38.     By mid-July 2021 (the end of Anticia's Second STD Leave), Anticia was still experiencing severe and Disabling Symptoms, and, at the recommendation of her mental health physicians, she applied for LTD Benefits claiming a disability onset date of January 20, 2021 ("Claim").

39.     Under the Plan, "Disability" and "Disabled" are defined as follows:

> "Disability" and "disabled" mean that because of Injury or Sickness:
>
> 1.     the insured cannot perform each of the material duties of [her] regular occupation; <u>or</u>
>
> 2.     the insured, while unable to perform all of the material duties of [her] regular occupation on a full time basis, is:
>
>> (a)     performing at least one of the material duties of [her] regular occupation or another occupation on a part-time or full-time basis; and
>>
>> (b)     earning currently at least 20% less per month than [her] indexed pre-disability earnings due to that same injury or sickness (emphasis added).

9

40.     In accordance with the Plan, for the entire duration of Anticia's LTD Claim, Anticia need only prove that she is unable to work in her Regular Occupation under either of the definitions for "Disability."

41.     The Plan provides for LTD Benefits in the amount of 66 2/3% of Anticia's basic monthly earnings prior to her Disability.

42.     Anticia's Disabling Symptoms and Medical Conditions meet (and indeed exceed) the definition of "Disability" under the Plan

43.     Every physician and other treatment provider who has examined Anticia concluded that she is totally Disabled.

44.     Anticia treated with psychiatrist, Antoine Adam, M.D., from at least September 2020 through March 20, 2021.

45.     In an office visit note dated January 16, 2021, Dr. Adam noted that Anticia was "feeling burdened mentally" because she had jumped back into her work too abruptly.  Dr. Adam recommended continued psychotherapy and prescribed Prozac, Clonidine, and Adderall.

46.     In a letter dated February 5, 2021 (*i.e.*, shortly after her Disability onset date), Dr. Adam, who treated Anticia through March 2021, diagnosed Anticia with Generalized Anxiety Disorder, Major Depressive Disorder, and ADHD, and noted that Anticia suffers from significant limitations in the following areas:

•      Handling time pressures and multiple tasks;

•      Interacting with others;

•      Sustaining concentration and focus;

•      Decision-making and problem-solving;

•      Communication;

10

- Organization and time management;

- Sleeping;

- Maintaining stamina/sustaining energy;

- Memory;

- Impulse control; and

- Coping with changes and interruptions.

47.    In his February 5, 2021 letter, Dr. Adam stated that "[a]s a result of this disability, Anticia Macalou is currently unable to work" because she needs continued treatment in hopes of recovery.

48.    In a Physician Statement dated February 9, 2021, Dr. Adam noted that Anticia's symptoms include fatigue, depression, anxiety, and reduced cognition, and indicated that examination revealed anxiety; depression; and reduced concentration, thinking ability, and cognition.

49.    Anticia treated with psychologist, Lilliam Rodriguez, Ph.D., from January 15, 2021 through May 2021.

50.    Treatment notes from Dr. Rodriguez document that Anticia suffered from, among other things, depression; anxiety; rapid, pressured speech; difficulty with sleep; feelings of constant worry; difficulty concentrating; impaired relationships; challenges managing her time and overall life; impaired judgment; and lack of energy.

51.    In a letter dated February 5, 2021, Dr. Rodriguez, consistent with Dr. Adam, diagnosed Anticia with Generalized Anxiety Disorder, Major Depressive Disorder, and ADHD and noted that Anticia suffers from significant limitations in the following areas, without limitation:

- Handling time pressures and multiple tasks;

11

- Interacting with others;

- Sustaining concentration and focus;

- Decision-making and problem-solving;

- Communication;

- Organization and time management;

- Sleeping;

- Maintaining stamina/sustaining energy;

- Memory;

- Impulse control; and

- Coping with changes and interruptions.

52.     In her letter dated February 5, 2021, Dr. Rodriguez agreed that "[a]s a result of this disability, Anticia Macalou is currently unable to work."

53.     In a Physician Statement dated February 7, 2021, Dr. Rodriguez again noted that Anticia's Disabling Symptoms include fatigue, depression, anxiety, and reduced cognition and that, upon examination, Anticia exhibited anxiety; depression; and reduced concentration, thinking ability, and cognition.

54.     In a subsequent letter dated April 6, 2021, Dr. Rodriguez noted the same diagnoses and limitations as in her February 5, 2021 letter, and also noted that Anticia must avoid tasks and obligations: involving complex activities, multi-tasking, and high expectations of productivity; requiring time pressures and deadlines; requiring sustained and significant concentration and focus; which prevent sufficient sleep; and which require a strict schedule.

55.     In her April 6, 2021 letter, Dr. Rodriguez again stated that "[a]s a result of her continuing disability, Ms. Macalou is currently unable to return to work."

12

56.    Anticia treated with psychiatrist, Shelly Cohen, M.D., from April 26, 2021 through July 21, 2021.

57.    Treatment notes from Dr. Cohen reveal that Anticia: felt worthless and broken, feared she would never regain the confidence she once had, and worried that her panic symptoms would render her unemployable in her occupation; continued to have problems with concentration; and felt "paralyzed" and had panic attacks any time she thought about work related tasks and/or returning to work.  Upon examination, Dr. Cohen noted symptoms of depression and anxiety, and that Anticia was tearful at times. Throughout her treatment of Anticia, Dr. Cohen increased Anticia's dose of Prozac, and continued to prescribe Adderall (to treat ADHD) and Klonopin (a benzodiazepine used to treat anxiety and panic disorders).

58.    In an Attending Physician Statement dated July 9, 2021, Dr. Cohen diagnosed Anticia with PTSD, Panic Disorder, and Major Depressive Disorder, and noted that she suffers from sleep disturbance, emotional dysregulation, impulsivity, hypervigilence, panic attacks, anticipatory anxiety regarding work, depressed mood, and agitation.  Regarding her psychiatric restrictions and limitations, Dr. Cohen noted that Anticia had severe limitations with: (a) concentration and focus; (b) time management; (c) analytical thinking; (d) communication; and (e) task shifting.

59.    Anticia has treated with psychologist, Kelly McAleer, Psy.D., from July 14, 2021 through the present date.

60.    The treatment notes from Dr. McAleer reveal that Anticia's treatment has focused on, without limitation, the following Disabling Symptoms: depression, anxiety, difficulty concentrating, interrupted/atypical sleep, feelings of numbness and apathy, avoidance of high stress triggers, guilt, low self worth, increased eating, and difficulty getting out of bed.

61.    Anticia's treatment with Dr. McAleer has included: cognitive behavioral therapy; mindfulness-based cognitive therapy; coping skills; dialectical behavioral therapy; supportive and process-oriented psychotherapy; and psychoeducation.

62.    Anticia has treated with Angel Caraballo, M.D., from August 31, 2021 through the present date.

63.    Throughout his treatment notes, Dr. Caraballo repeatedly concluded that Anticia was "not functioning well and unable to meet the demands of her job" because of her decreased cognitive and emotional functioning.    Dr. Caraballo recommended continued medical leave and neuropsychological testing (results discussed below).

64.    As per Dr. Caraballo's recommendation, Anticia underwent a full battery of neuropsychological testing as administered by Preetika Mukherjee, Ph.D., on September 21, September 24, and October 1, 2021 ("Neuropsychological Testing").  The Neuropsychological Testing revealed substantial deficits in sustained attention, executive functioning (*e.g.*, problem-solving), and processing information.

65.    Psychological testing conducted in conjunction with the Neuropsychological Testing revealed that Anticia suffers from Disabling Symptoms, including, *inter alia*: severe anxiety; depression; emotional lability; feelings of guilt, anger, pain, and shame; anhedonia; social withdrawal; lethargy; lack of interest; flashbacks; and mood changes.

66.    In her report, Dr. Mukherjee confirmed that the "interaction between [Anticia's] emotional and cognitive functioning is significantly interfering with her daily functioning, especially work."

67.    In her report, Dr. Mukherjee explained:

On the current assessment, even with medication, Ms. Macalou's

14

performance was weak on the task of sustained attention. With regard to executive functioning, Ms. Macalou was slow on multiple tasks and struggled with problem-solving. The results further suggested that Ms. Macalou struggled with processing information at the level of her cognitive ability, particularly when it required a higher level of organization. With regards to the processing of information, Ms. Macalou missed many details and struggled with organizing and integrating her thoughts leading to weaker retrieval of information. Ms. Macalou's performance was inconsistent due to significant fluctuations in her attention. Ms. Macalou also noted that she gets easily distracted and often starts multiple tasks and is unable to complete them. She also feels that she takes a lot of time to complete the task and is getting easily tired.

In terms of Ms. Macalou's psychological functioning, her profile is complicated due to multiple traumatic experiences since her childhood. Due to the traumatic experiences, Ms. Macalou has developed a pattern of behaviors and attitudes, some functional and some dysfunctional, to view and deal with the world around her. For example, since she was a child, she has not felt valued and always craved validation from her mother. Due to this, Ms. Macalou believes that others cannot understand and/or support her struggles. She has trouble leaning in and accepting others' support as she is unable to trust. Therefore, she has always carried an appearance of inner confidence and self-assurance, even when she is feeling anxious, stressed, and overwhelmed inside and needs support. Furthermore, as she has not processed the traumatic incidents in her life, she has started exhibiting symptoms of Post Traumatic Stress Disorder (e.g., hypervigilence, flashbacks, social isolation, avoidance of reminders, mood changes). Ms. Macalou is constantly triggered by things that remind her of the incidences. Furthermore, she is currently experiencing significant Major Depressive Disorder symptoms (e.g., sadness, social withdrawal, lethargy, lack of motivation, lack of interest).

68.    Dr. Mukherjee concluded that Anticia's Disabling Symptoms interfere with her ability to work.  She stated that Anticia's "struggles with attention, executive functioning, and regulating emotions interfere significantly with Ms. Macalou's day-to-day functioning leading to further difficulties with emotional functioning."

15

69.    Unum was provided with all of the foregoing medical records and reports pertaining to Anticia prior to its denial of her Claim.[1]

***Unum's Wrongful Denial of Anticia's Claim***

70.    Notwithstanding the overwhelming evidence that Anticia's Medical Conditions and Disabling Symptoms plainly confirm her "Disability" within the meaning of the Plan, Unum denied Anticia's LTD Claim via letter dated January 5, 2022 ("Initial Determination").  According to Unum, Anticia was "not disabled from performing [her] regular occupation on a full-time basis as of July 20, 2021 or beyond."

71.    Unum's Initial Determination is based on the arbitrary opinions of its in-house file reviewers who never examined Anticia: (1) psychiatrists Dr. Nicholas Kletti ("Kletti") (who, upon information and belief, no longer practices medicine) and Dr. Stuart Shipko ("Shipko"), both of whom baselessly opined that Anticia's Disabling Symptoms were not of a severity as to prevent her from performing the duties of her Regular Occupation, and (2) neuropsychologist Dr. Edan Critchfield ("Critchfield"), who despite acknowledging Anticia's cognitive complaints, erroneously opined that the Neuropsychological Testing "does not reflect deficits that would be expected to result in functional impairment" (collectively, "File Reviewers").

72.    The opinions of Unum's File Reviewers and, therefore, Unum's Initial Determination, are arbitrary and capricious because, without limitation:

- Kletti and Shipko arbitrarily ignored the forms, letters, and statements from Anticia's treating physicians, all of which support her disability;

---

[1]This Complaint is organized chronologically.  The fact that medical records and reports summarized above are from 2021, should *not* be construed to suggest that Anticia stopped her medical treatment.  The documentation discussed below confirms her ongoing treatment for her Medical Conditions and Disabling Symptoms and her ongoing total "Disability."

- Kletti and Shipko selectively cherry-picked portions of Anticia's medical records that could be used to support their preconceived notion that Anticia was no longer disabled;

- Kletti and Shipko erroneously relied strictly on Anticia's psychiatric treatment notes -- which are not meant to provide evidence for disability determinations -- to the exclusion of the forms, letters, and statements of Anticia's treating doctors;

- Kletti and Shipko falsely alleged that Anticia's Disabling Symptoms are primarily specific to her job situation at McKinsey;

- Critchfield arbitrarily ignored the fact that Anticia's Neuropsychological Testing revealed clear deficits in sustained attention, executive functioning (*i.e.*, problem-solving), and processing information, and in turn failed to consider how these deficits would impact Anticia's ability to perform the duties of her cognitively demanding, highly stressful Regular Occupation;

- Critchfield improperly ignored the interaction between Anticia's emotional and cognitive functioning;

- Critchfield erroneously ignored Anticia's symptoms of PTSD, which significantly interfere with her daily functioning;

- Unum's File Reviewers illegally failed to consider Anticia's subjective symptoms and complaints; and

- Unum failed to conduct a medical examination of Anticia, which was indispensable to evaluating Anticia's psychiatric disability.

73.     Unum's Initial Determination is also based on the arbitrary opinions of its in-house vocational consultant, Deborah Maxcy, MS, CRC ("Maxcy"), who merely conducted an inaccurate occupational analysis to determine the duties of Anticia's Regular Occupation.  Maxcy's faulty review, and therefore, Unum's Initial Determination, is also arbitrary and capricious because:

- Maxcy and Unum arbitrarily failed to conduct an actual vocational analysis to determine if Anticia's restrictions and limitations prevent her from performing the duties of her Regular Occupation;

- Maxcy improperly classified Anticia's Regular Occupation as a Business Consultant as opposed to a Project Director or Project Management Specialist; and

17

- Maxcy illegally failed to consider all of the non-exertional, cognitive requirements of Anticia's Regular Occupation. Specifically, Maxcy incorrectly stated that the only cognitive demands associated with Anticia's Regular Occupation include: dealing with people; influencing others; making judgments and decisions; and directing and planning the activities of others; when in reality Anticia's Regular Occupation required all of the Cognitive Requirements as set forth in paragraph 31, *supra*.

***Anticia's Administrative Appeal of Unum's Initial Determination***

74.    On June 30, 2022, Anticia, by and through her undersigned attorneys, appealed the Initial Determination by Unum under the Plan ("Administrative Appeal").

75.    The basis of Anticia's Administrative Appeal included, *inter alia*, the fatal flaws and shortcomings of the Initial Determination listed in paragraphs 72 and 73, above (collectively, "Fatal Flaws").

76.    As part of her Administrative Appeal, Anticia, through counsel, submitted her comments and additional medical and vocational documentation including, without limitation: (1) Narrative Report dated March 25, 2022 from Dr. McAleer ("Narrative Report"); (2) Mental Residual Functional Capacity Questionnaire dated February 14, 2022 from Dr. Caraballo ("Mental RFC Questionnaire"); (3) Rebuttal Report from Dr. Mukherjee ("Rebuttal Report"); and (4) Vocational Evaluation Report dated May 27, 2022 from Vocational Expert Johnson ("Vocational Assessment").

77.    In her Narrative Report, Dr. McAleer stated that she has treated Anticia for her Disabling Symptoms on a weekly basis (sometimes twice per week) beginning on July 14, 2021.

78.    Dr. McAleer, in her Narrative Report, explained that Anticia's Disabling Symptoms result in the following limitations:

- Difficulty concentrating and paying attention;

- Difficulty starting/completing tasks;

- Difficulty prioritizing tasks and managing her time;

18

- Difficulty engaging in multiple tasks at one time (*e.g.*, multi-tasking);

- Social withdrawal and difficulty seeking help from, and communicating with (*i.e.*, interacting) others;

- Stress intolerance;

- Difficulty integrating multiple data sources;

- Poor sleep (*e.g.*, too much or too little);

- Emotional lability; and

- Avolition (collectively, "Limitations").

79.     In her Narrative Report, Dr. McAleer concluded that given the requirements of her Regular Occupation, Anticia's Disabling Symptoms and Limitations "prevent her from performing the responsibilities, tasks, and requirements of her job."

80.     In her Narrative Report, Dr. McAleer stated that she had reviewed the medical records and statements from Drs. Adam, Rodriguez, and Cohen, and found that Anticia's Limitations have "remained largely the same since January 20, 2021," and that "[b]ased on these statements and my weekly treatment of Anticia, it is clear that she has been *unable to perform the duties of her occupation at the high level expected of her since at least January 20, 2021*" (emphasis added).

81.     In her Narrative Report, Dr. McAleer also refuted Shipko's opinions, noting that: (a) Shipko did not examine Anticia; (b) Shipko's reliance strictly on the office notes of Anticia's physicians and other treatment providers is misplaced; (c) Shipko ignored Anticia's cognitive deficits; and (d) Anticia's Disabling Symptoms would prevent her from working in any high pressure work environment; in other words, her Disabling Symptoms are not specific to her job at McKinsey, but rather would be present in Regular Occupation in general.

82.     Dr. McAleer concluded her Narrative Report by stating that "Anticia continues to suffer from psychological Symptoms and Limitations that prevent her from performing the duties of her occupation as an Expert Associate Partner. Anticia requires ongoing treatment of unknown duration to reduce the severity of her Symptoms. I urge Unum to approve Anticia's Long Term Disability benefits while she continues her psychiatric and psychological treatment."

83.     In his Mental RFC Questionnaire, Dr. Caraballo stated that he treats Anticia on a monthly basis for her Major Depressive Disorder, ADHD, and PTSD, and reported that Anticia's mental status examinations have revealed a depressed and anxious mood, poor sleep, poor appetite, poor concentration, inattention, word-finding difficulties, irritability, and flashbacks.

84.     Dr. Caraballo, in his Mental RFC Questionnaire, noted that Anticia's Disabling Symptoms include: anhedonia or pervasive loss of interest in almost all activities; appetite disturbance; decreased energy; blunt, flat, or inappropriate affect; feelings of guilt or worthlessness; impairment in impulse control; poverty of content of speech; generalized persistent anxiety; mood disturbance; recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress; change in personality; emotional withdrawal or isolation; intense and unstable interpersonal relationships and impulsive/damaging behavior; motor Tension; emotional lability; difficulty with attention and focus; easy distractibility; memory impairment; sleep disturbance; and recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on average at least once per week.

85.     In his Mental RFC Questionnaire, Dr. Caraballo indicated that Anticia is unable to meet competitive standards (*i.e.*, she "cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting") in the following areas:

•        Understanding and remembering detailed instructions;

20

- Maintaining attention and concentration for extended periods of time;

- Performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerance;

- Working in coordination with or proximity to others without being distracted by them;

- Completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods;

- Accepting instructions and responding appropriately to criticism from supervisors;

- Responding appropriately to changes in the work setting;

- Dealing with normal work stress; and

- Dealing with stress of semi-skilled and skilled work.

86.     In his Mental RFC Questionnaire Dr. Caraballo found that Anticia is seriously limited, but not precluded from (*i.e.*, "the ability to function in this area *is seriously limited and less than satisfactory*, but not precluded") performing the following tasks:

- Remembering locations and work-like procedures;

- Carrying out detailed instructions;

- Sustaining an ordinary routine without special supervision;

- Interacting appropriately with the general public;

- Asking simple questions or requesting assistance;

- Getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; and

- Setting realistic goals or making plans independently of others.

87.     In his Mental RFC Questionnaire, Dr. Caraballo further confirmed that Anticia's Disabling Symptoms would cause her to miss work at least four (4) days per month, and concluded

that he has no doubt that Anticia is totally disabled from her Regular Occupation.

88.    In her Rebuttal Report to Unum, Dr. Mukherjee clarified Anticia's cognitive deficits, reiterating that: her processing speed is "significantly low on multiple tasks;" she exhibited "significant inconsistency" in processing information; and had "significant fluctuations in her attention." Dr. Mukherjee stated:

> Individuals with high cognitive skills are well aware of the slowness in their processing speed, which leads to increased stress and anxiety about their difficulty in meeting their own and others' expectations. The increased anxiety further leads to slowness in processing information. Due to the slowness, as work accumulates and becomes more complex and demanding, requiring Ms. Macalou to organize and synthesize large amounts of information, she struggles more with keeping up with her work. Again, this interaction of cognitive and emotional functioning is what leads to functional impairment

89.    In her Rebuttal Report to Unum, Dr. Mukherjee noted that Critchfield failed to consider the interaction between Anticia's emotional and cognitive functioning, which results in

> deficits in her sustained attention, executive functioning, ability to process information, etc. – deficits that are inconsistent with her ability to perform the duties of her occupation as Expert Associate Partner. These deficits are in addition to the limitations caused by her psychological symptoms, which include, without limitation: anxiety; depression; emotional lability; feelings of guilt, anger, pain, and shame; anhedonia; social withdrawal; lethargy; lack of motivation; lack of interest; flashbacks; mood changes; etc.

90.    In her Rebuttal Report to Unum, Dr. Mukherjee further explained that Critchfield failed to consider that Anticia's PTSD "exaggerates Ms. Macalou's depression and anxiety and leads to functional impairment."

91.    As part of her Vocational Assessment, Vocational Expert Johnson conducted a telephonic interview with Anticia on May 6, 2022 ("Interview") and noted that, consistent with her

Disabling Symptoms and the unanimous conclusions of her physicians and other treating providers, Anticia: initially had forgotten about the Interview and had to be reminded; became distracted on a few occasions and had difficulty staying on topic during the Interview; and exhibited word-finding difficulties during the Interview.

92.     In her Vocational Assessment, Vocational Expert Johnson determined that, based on her vocational description, Anticia's Regular Occupation most closely resembles that of a Project Director (DOT Code: 189.117-030) and Project Management Specialist (O*Net Code: 13-1082.0), and that contrary to Unum's assessment which was based on the false assumption that Anticia's actual Regular Occupation required only four (4) cognitive requirements, Anticia's Regular Occupation required many more significant Cognitive Requirements (*see* paragraph 31, *supra*).

93.     In her Vocational Assessment, Vocational Expert Johnson explained that given the cognitive demands of her Regular Occupation and Anticia's Disabling Symptoms, restrictions, and Limitations, Anticia is unable to work in her Regular Occupation (or any other occupation) because:

- Anticia's poor concentration and inattention would not be tolerated in any work environment.  Vocational Expert Johnson stated: "In the competitive workforce, employees are expected to maintain attention and concentration typically for 2-hour periods before a break is afforded. Although there is some tolerance for off-task behaviors, such as talking with a colleague or daydreaming, employers would not allow an individual to be distracted and unproductive for extended periods, particularly in the skilled work that Ms. Macalou has performed in the past;"

- Anticia's "seriously limited" abilities to carry out detailed instructions, set realistic goals, and make plans independently of others is incompatible with her job requirement;

- Anticia's inability to think critically, problem-solve, utilize quantitative or analytical abilities, maintain attention to detail, and navigate key computer-based programs -- all essential functions of her Regular Occupation -- "would eliminate Ms. Macalou's ability to successfully perform her own occupation, or any occupation where her skills may transfer;"

- Anticia's inability to perform activities within a schedule; perform at a consistent pace without an unreasonable number and length of rest periods; maintain regular attendance; be punctual within customary tolerances; and complete a normal workday or workweek would also not be tolerated by any employer.

- Anticia's word-finding difficulties and serious limitations and/or inability to work, interact, and collaborate with others; effectively communicate with others; accept instructions; and respond appropriately to criticism from supervisors prevent her from working as an Expert Associate Partner, an occupation where "collaborating with colleagues, and managing a team were essential functions;" and

- Anticia's inability to deal with normal work stress (and the stress associated with semi-skilled and skilled work) is incompatible with working in her own occupation. Vocational Expert Johnson stated that Anticia's "own occupation is a demanding, highly skilled, and performance-based position. The inability to manage normal work stress would eliminate the ability to perform her own occupation."

94.    Vocational Expert Johnson concluded her Vocational Assessment by stating: "In my vocational opinion, based on the restrictions and limitations confirmed by her treating providers, Ms. Macalou has been, and continues to be unable to perform the material and substantial duties of her own occupation, or any gainful occupation since January 2021."

95.    The evidence confirms that every physician and other treatment provider who has examined Anticia found her to be "Disabled" (*i.e.*, she is unable to work in her Regular Occupation).

***Anticia's Second Failed Return to Work Attempt***

96.    Despite her ongoing, severe Disabling Symptoms and Limitations, Unum's adverse Initial Determination forced Anticia to attempt another return to work on or about March 1, 2022 ("Second Failed RTW Attempt") against her doctors' recommendations.

97.    As Anticia explains in her Affidavit, she had no choice but to attempt another return to work. Anticia stated: "I returned out of sheer necessity because Unum denied my LTD benefits. I had no choice; without any ability to generate income necessary to survive, my back was against the wall – I needed to make money and had no other option."

24

98.    In her letter dated June 24, 2022 ("Supplemental Letter"), Dr. McAleer explained:

> While Anticia was still experiencing Symptoms throughout and around the time that she determined that she needed to return to work, she also expressed significant stress over her finances and stated that she had no choice; at the very least, she had to try to return to her job. Knowing that financial stress (among other things) can result in increased psychological symptoms, I agreed to work with Anticia to produce a list of accommodations that could, if agreed to, possibly help her to transition back to the workplace.

99.    Prior to her Second Failed RTW Attempt, with Dr. McAleer's assistance, Anticia and McKinsey agreed on certain accommodations.  However, the accommodations that McKinsey provided did not reduce her Disabling Symptoms to any degree and thus did not facilitate a transition back to productive work.

100.    Shortly after she began her Second Failed RTW Attempt, Anticia's mental health and Disabling Symptoms became progressively worse.  While Anticia tried to "stick it out" as long as she could, her "[w]ork became unsustainable" and Anticia felt like she "was about to have a complete mental breakdown."  As a result, Anticia, after consulting her treating physicians and other treatment providers, stopped working again on June 17, 2022 and was forced to resign from her position at McKinsey.

101.    In her Supplemental Letter, Dr. McAleer stated that Anticia's Second Failed RTW Attempt "further demonstrates that, given her Disabling Symptoms and Limitations, she is incapable of performing the duties of her occupation as stated.  Due to the demanding and stressful nature of her occupation,  I do not believe that accommodations would allow Anticia to return to work as an Expert Associate Partner at this time.  Her Failed Return to Work Attempt only served to cause more stress in Anticia's life and increase her already severe symptoms and fragile psyche."

102.    Anticia's Second Failed RTW Attempt conclusively proves that she is unable to work in her Regular Occupation and that she is entitled to her LTD Benefits.

**Unum's Review and Denial of Anticia's Administrative Appeal**

103.    By letter dated July 5, 2022, Unum acknowledged that it received Anticia's Administrative Appeal on June 30, 2022.

104.    In a letter dated August 2, 2022, Unum stated that, based on a review of Anticia's Administrative Appeal, its Initial Determination which found that Anticia was not Disabled throughout the 180-day Elimination Period, was correct and that Unum was planning to deny Anticia's Administrative Appeal.    Nonetheless, pursuant to the ERISA Claims Procedure Regulations, Unum provided copies to Anticia of the "new or additional evidence or rationale [it] considered, relied upon or generated during the review process" ("Bogus New Reports") and advised that Anticia had until August 17, 2022 to provide a response.

105.    In its August 2, 2022 letter, Unum, in violation of the ERISA Claims Procedure Regulations, advised that it needed a "an extension of 45 days to complete [its] review" -- an extension that, according to Unum, would begin "on the earlier of the date you provide any additional information or on August 18, 2022 if we do not receive a response from you."  In doing so, Unum sought, and indeed, as discussed *infra*, illegally tolled and extended its time to decide Anticia's Administrative Appeal in violation of the ERISA Claims Procedure Regulations.

106.    Unum's Bogus New Reports consisted of: (1) a vocational review conducted by Unum's in-house vocational consultant, Kelly Marsiano, M.Ed, CRC ("Marsiano"); (2) a file review conducted by Unum's in-house nurse consultant, Megan Yeaton ("Yeaton"); and (3) a file review conducted by Unum's in-house medical consultant, Dr. Peter Brown ("Brown").

26

107. Notably, following her review of Anticia's medical evidence, Yeaton, in her July 25, 2022 file review report ("Yeaton's Report"), concluded, consistent with Anticia's treating physicians, that Anticia was Disabled during the entire Elimination Period. Yeaton stated:

> It is this CC's opinion [that] the medical/file evidence support R&L's that would have precluded the Clmt from performing the cognitive demands of highly skilled work that involves dealing with people, influencing others, making judgments and decisions, directing and planning the activities of others from 1/20/2021 through 7/20/2021...

108. Nonetheless, Brown disagreed with Yeaton, claiming, without explanation, that while Anticia was Disabled from January 20, 2021 through May 19, 2021, she was not disabled throughout the entire Elimination Period which ran through July 20, 2022.

109. The reports from Unum's Marsiano and Brown suffer from the same Fatal Flaws as those of their predecessors, Kletti, Shipko, Critchfield, and Maxcy. *See* paragraphs 72 and 73, *supra*.

110. Anticia, by and through her undersigned attorneys, submitted a response to Unum's Bogus New Reports by letter dated August 12, 2022 ("Response"), pointing out, among other things, Yeaton's support of Anticia's Claim and the flaws in Brown's reasoning, and summarizing the evidence that unequivocally proves Anticia was disabled throughout the entire Elimination Period.

111. Unum, via letter dated August 17, 2022, again advised that it intended to deny Anticia's Administrative Appeal. Unum stated: "The Benefits Center concluded your client's medical records did not support restrictions and limitations which would preclude her from performing the duties of her occupation through the elimination period. Therefore, she was not eligible for Long Term Disability benefits." However, instead of officially denying Anticia's Administrative Appeal, Unum again provided Anticia with additional "new information and/or rationale" ("Additional Bogus Reports") and gave her until September 1, 2022 to respond.

27

112.    In its August 17, 2022 letter, Unum, in violation of the ERISA Claims Procedure Regulations, advised that it extended its own time to render a decision on Anticia's Administrative Appeal from August 2, 2022 (the date it provided the Bogus New Reports) through August 12, 2022 (the date of Anticia's Response), and that it would render a decision by September 26, 2022.

113.    The Additional Bogus Reports consisted of, among other things, a "correction" to Yeaton's Report wherein she miraculously reversed course and stated that Anticia was not actually disabled during the entire elimination period.

114.    Inasmuch as it was clear that Unum was intent on denying Anticia's Claim as it had stated in its August 2, and August 17, 2022 letters, and inasmuch as Anticia had already submitted all supporting medical and vocational documentation in support of her Administrative Appeal, Anticia did not respond to Unum's August 17, 2022 letter.

115.    Unum, via letter dated September 22, 2022, denied Anticia's Administrative Appeal ("Final Determination").

116.    Unum's Final Determination was based on the opinions of non-practicing file reviewer Brown and Marsiano, neither of whom ever examined or even spoke with Anticia.

117.    The reports from Brown and Marsiano, and therefore, Unum's Final Determination, suffer from the same Fatal Flaws as the Initial Determination. *See* paragraphs 72 and 73, *supra*.

118.    In addition to the Fatal Flaws, Unum, on review of Anticia's Administrative Appeal, failed to consult a neuropsychologist to consider the opinions of Dr. Mukherjee in violation of the ERISA Claims Procedure Regulations.

119.    Unum's Final Determination was untimely under ERISA.

120.    According to the ERISA Claims Procedure Regulations, Unum was required to render a decision on Anticia's Administrative Appeal within 45 days of its submission (29 C.F.R.

28

§§2560.503-1(i)(1)(i) and (i)(3)(i)).  Under ERISA, Unum was permitted one 45-day extension *only* if it were to determine that "special circumstances...require an extension of time for processing the claim" (*Id.*).

121.    Providing Anticia with the opportunity to respond to the Bogus New Reports does *not* constitute "special circumstances" required under 29 C.F.R. §§2560.503-1(i)(1)(i) and (i)(3)(i) for Unum to allow itself an extension of its 45-day deadline to render a decision on Anticia's Administrative Appeal.

122.    Under ERISA, Unum was required to render a decision on Anticia's Administrative Appeal by August 14, 2022 (*i.e.*, within 45 days after its receipt of Anticia's Administrative Appeal on June 30, 2022).

123.    Unum did not render its Final Determination until September 22, 2022 -- 39 days after its deadline to do so.

124.    Unum's failure to render its Final Determination in a timely fashion was neither inadvertent nor harmless to Anticia.

125.    Upon receipt of the Final Determination, Anticia had exhausted her administrative remedies; Unum's stated in its Final Determination: "If your client disagrees with this decision, you have a right to bring a civil suit under section 502(a) of the Employee Retirement Income Security Act of 1974."

***Unum Failed to Provide a Full and Fair Review as Required by ERISA***

126.    Neither Unum's Initial Determination nor its Final Determination (collectively, "Determinations") were based on substantial evidence.

127.    Unum failed to provide a full and fair review of Anticia's Claim and Administrative Appeal as required by the ERISA Claims Procedure Regulations.

128.    In its Determinations, Unum unreasonably cherry-picked from the evidence to support its pre-determined conclusions, while ignoring the overwhelming evidence of Anticia's disability.

129.    In its Determinations, Unum failed to consider and/or simply ignored the evidence and overwhelming opinions of Anticia's treating physicians.

130.    Unum ignored the fact that every physician and other treatment providers who examined Anticia found her to be "Disabled."  Only Unum, which has a financial incentive to deny LTD Benefits claims, found otherwise.

131.    Unum failed to conduct an in-person examination of Anticia at any stage of the claims evaluation process, as specifically permitted by the Plan, and instead arbitrarily based its Determinations only on paper reviews.

132.    In its Determinations, Unum failed to consider Anticia's subjective complaints; ignored her Disabling Symptoms; and ignored the interaction between Anticia's emotional and cognitive functioning.

133.    Unum failed to conduct a vocational analysis to determine if Anticia's restrictions and Limitations prevent her from performing the duties of her Regular Occupation; improperly classified Anticia's Regular Occupation; and blatantly failed to consider all of the non-exertional, cognitive requirements of Anticia's Regular Occupation.

134.    Unum's Determinations are wrongful and without basis in law or fact; made against the substantial weight of the evidence; and are arbitrary and capricious.

135.    Unum's failure to meaningfully consider all of Anticia's medical and vocational evidence demonstrates that Unum was putting its own financial interests above those of a Plan beneficiary in violation of ERISA.

*Unum's Conflict of Interest*

136.    At all relevant times, Unum has been operating under an inherent and structural conflict of interest because, on the one hand Unum is financially liable for benefit payments to Anticia and, on the other hand each payment issued depletes Unum's assets.

137.    Unum's Determinations were influenced by this conflict of interest.

138.    Unum's conflict of interest extended to and infected its File Reviewers and vocational consultants, Kletti, Shipko, Critchfield, Brown, Maxcy, and Marsiano, none of whom ever examined Anticia (collectively, "In-House Consultants").

139.    Upon information and belief, Kletti, Shipko, Critchfield, and Brown are in-house, salaried medical consultants employed by Unum.

140.    Upon information and belief, Maxcy and Marsiano are in-house, salaried vocational consultants employed by Unum.

141.    Upon information and belief, Unum's In-House Consultants have conducted reviews in connection with numerous other individuals insured by Unum.

142.    Unum knows, or has reason to know, that its In-House Consultants are hired and/or retained to complete file reviews to serve insurance companies, rather than the individual claimant.

143.    Upon information and belief, Unum pays substantial sums of money to its In-House Consultants to conduct reviews of Unum's insured.

144.    Because Unum's In-House Consultants derive substantial income from performing file reviews for Unum, the In-House Consultants have an incentive to provide file reviews that Unum deems favorable in order to perform future file reviews for Unum and/or retain their jobs.

145.    Unum has failed to take active steps to reduce potential bias and to promote the accuracy of its benefit determinations.

## FIRST CAUSE OF ACTION

146.    Anticia repeats and realleges the allegations contained in the preceding paragraphs 1 through 145  inclusive, as if set forth fully herein.

147.    Anticia is, and at all relevant times herein has been, a participant and beneficiary under the terms of the Plan.

148.    Anticia and/or McKinsey paid all required premiums under the Plan.

149.    Anticia otherwise complied with all requirements of the Plan.

150.    Unum accepted all of Anticia's premium payments under the Plan.

151.    Anticia timely applied for LTD Benefits under the Plan.

152.    At all relevant times since January 20, 2021, Anticia has been totally Disabled under the terms of the Plan.

153.    Under the Plan, Anticia is entitled to LTD Benefits because she suffers from a "Disability" as defined in the Plan.

154.    Unum has failed and refused to pay Anticia her LTD Benefits to which she is rightfully entitled from July 20, 2021 (following the elimination period) through the present date.

155.    Anticia has satisfied all conditions precedent under the Plan and is, therefore, eligible to receive LTD Benefits beginning July 20, 2021.

156.    Anticia has exhausted all applicable administrative appeals.

157.    Unum's denial of Anticia's Claim and Administrative Appeal is and has been wrongful, illegal, arbitrary and capricious, lacking substantial evidence, in bad faith, and is otherwise violative of the Plan as well as the provisions and regulations of ERISA.

158.    Unum has financial conflicts of interest with respect to handling and denying Anticia's LTD Benefits.

159.     Unum was influenced by its financial conflict of interest, as both the administrator of the Plan and the payor of benefits thereunder, when deciding to deny Anticia's Claim and Administrative Appeal.

160.     Without limitation, Unum's unlawful, arbitrary, and capricious misconduct is evidenced by, *inter alia*, the following:

(a)     Denying LTD Benefits to Anticia at a time when it knew that she was entitled to said benefits under the terms of the Plan, in bad faith and contrary to the LTD Plan terms;

(b)     Unreasonably withholding payments from Anticia knowing her Claim for benefits was valid;

(c)     Unreasonably failing to pay ongoing benefits without having any evidence, substantial or otherwise, supporting its Initial and Final Determinations;

(d)     Ignoring the assessments from Anticia's treating physicians without any basis or explanation for doing so in violation of 29 C.F.R. §2560.503-1(h)(2)(iv);

(e)     Relying on its In-House Consultants to deny a Claim supported by Anticia's treating physicians;

(f)     Dismissing and downplaying the results of the Neuropsychological Testing;

(g)     Relying on In-House Consultants who did not consider or comment on all relevant information;

(h)     "Cherry-picking" and selectively highlighting certain factors in medical or reviewing reports that support its position, while ignoring the conclusions and reports of Anticia's treating physicians regarding the conditions for which they render treatment;

(i)     Disregarding Anticia's subjective complaints, her own assessment of her Medical Conditions and Disabling Symptoms, and how they limit and restrict her ability to perform the duties of her Regular Occupation in violation of 29 C.F.R. §2560.503-1(h)(2)(iv);

(j)     Engaging in a pattern of procedural irregularities to advance its own corporate interests in terminating benefits to the detriment of LTD Plan participants;

(k)     Failing to provide a "full and fair review" as required by 29 C.F.R. §2560.503-1(h)(4);

33

(l)    Failing to provide Anticia with an adequate description of any additional material or information necessary to perfect her Claim in violation of 29 C.F.R. §2560.503-1(g)(1)(iii);

(m)    Failing to maintain and utilize "reasonable claims procedures" as required by 29 C.F.R. §2560.503-1(b), in violation of ERISA;

(n)    Consistently acting in its own corporate interests instead of those of the Plan and its participants, such as Anticia;

(o)    Failing to render a timely decision on appeal pursuant to 29 C.F.R. §2560.503-1(i); and

(p)    Failing to ensure that Anticia's Claim and Administrative Appeal were adjudicated in a manner designed to ensure the independence and impartiality of the persons involved in making the decision as required by 29 C.F.R. §2560.503-1(b)(7).

161.    Unum's unlawful behavior and violations of the ERISA Claims Procedure Regulations were purposeful and harmful to Anticia.

162.    A "higher than marketplace" quality standard, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 195 (2008), applies to evaluating the actions of Unum in this case.

163.    Unum was required to discharge its fiduciary duties "solely in the interests of the participants and beneficiaries of the plan."

164.    Unum violated the "higher than marketplace" standards imposed by ERISA.

165.    Unum breached its fiduciary duty by failing to fairly review and reasonably interpret the reports, letters, and medical records provided by Anticia. Instead, Unum created artificial reasons for denying Anticia's Claim and Administrative Appeal. Unum, among other things, selectively highlighted certain portions of Anticia's medical reports in order to cast a favorable light on its position while ignoring the conclusions of Anticia's treating physicians.

166.    Unum placed its financial interest in reducing its expenses and increasing its profitability above Anticia's interests under the Plan to receive her LTD Benefits.

34

167.    Anticia has been forced to bring the instant action as a direct result of Unum's unlawful denial of benefits and violations of the Plan and ERISA.

168.    Under Section 502(a)(1)(B) of ERISA, 29 C.F.R. §2560.503-1(a)(1)(B), Anticia is entitled to an order: (i) directing defendants to make equitable restitution with respect to, and/or otherwise make payment of, all back LTD Benefits from July 20, 2021 to date, with interest; and (ii) declaring that Anticia is entitled to continue receiving her LTD Benefits for so long as she continues to be "Disabled" as defined by the Plan.

## SECOND CAUSE OF ACTION

169.    Anticia repeats and realleges the allegations contained in the preceding paragraphs 1 through 168 inclusive, as if set forth fully herein.

170.    Under 29 U.S.C. §1132(g)(1), Anticia is entitled to her reasonable attorneys' fees and costs incurred in an action to recover her LTD Benefits.

171.    As a result of Unum's breaches and failings, Anticia has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action.

172.    Anticia anticipates incurring further additional attorneys' fees and costs hereinafter in pursuing this action, all in a final amount to be determined by the Court.

173.    By reason of the foregoing, Anticia is entitled to an award of reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, for the reasons stated, Anticia is entitled to judgment over and against Defendants as follows:

(i)    directing Defendants to make equitable restitution with respect to, and/or otherwise make payment of, all back LTD Benefits from July 20, 2021 to date;

35

(ii)     declaring that Anticia is entitled to continue receiving her LTD Benefits for as long

          as she continues to be disabled under the terms of the Plan;

(iii)    awarding Anticia reasonable attorneys' fees, pre-judgment interest, and costs; and

(iv)     such other relief as this Court may deem just and proper.

Dated:  New York, New York
          December 9, 2022

                                            **HILLER, PC**
                                            *Attorneys for Plaintiff*
                                            641 Lexington Avenue, 29th Floor
                                            New York, New York 10022
                                            (212) 319-4000

                              By: _____
                                            Michael S. Hiller (MH 9871)
                                            Paul M. Kampfer (PK 9186)

36