UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ANTICIA MACALOU,

                              Plaintiff,                          22-cv-10439 (PKC)

              -against-                                          OPINION AND ORDER

FIRST UNUM LIFE INSURANCE COMPANY,

                              Defendant.
-------------------------------------------------------------x

CASTEL, U.S.D.J.,

             Plaintiff Anticia Macalou moves for attorneys' fees, costs, and prejudgment

interest following her award of long-term disability benefits in this action brought pursuant to the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et. seq.,

against defendant First Unum Life Insurance Company ("First Unum").  For the following

reasons, the Court will grant Macalou's motion, with modifications.

BACKGROUND

             The Court assumes familiarity with the facts of this case and its procedural

history.  (See Findings of Fact and Conclusions of Law, ECF 92.)  In sum, Macalou filed this

action under 29 U.S.C. § 1132 of ERISA alleging that First Unum wrongfully denied her long-

term disability benefits under the terms of a long-term disability plan that it administered for her

former employer McKinsey & Company.  (See id.)  Her claim for benefits was based on the

disabling effects of her major depressive disorder, anxiety disorder, post-traumatic stress

disorder, and attention deficit/hyperactivity disorder.  (See id.)  Following a bench trial on a

stipulated administrative record, the Court in its Findings of Fact and Conclusions of Law of

November 22, 2024 determined that Macalou had met her burden to show that she was disabled

under the relevant policy and awarded her long-term disability benefits to the date of judgment.
(See id.)  Final judgment was entered on January 6, 2025 in the amount of $928,954.90 for
benefits owed from July 20, 2021 through December 13, 2024.  (ECF 98.)

        The Court also concluded in its Findings of Fact and Conclusions of Law that
Macalou was entitled to reasonable attorneys' fees and costs, as well as prejudgment interest.
(See ECF 92.)  Macalou, who is represented by the law firm Hiller, PC ("HPC"), now seeks
$252,358.50 in attorneys' fees, $6,862.34 in costs, and $337,891.47 in prejudgment interest at a
rate of 21.8%.

DISCUSSION

Reasonableness of the Fees

        "Attorneys' fees are awarded by determining a presumptively reasonable fee,
reached by multiplying a reasonable hourly rate by the number of reasonably expended hours."
Graziano v. First Unum Life Insurance Co., 21-cv-2708 (PAC), 2024 WL 1175143, at *2
(S.D.N.Y. Mar. 19, 2024) (quoting Bergerson v. New York State Office of Mental Health,
Central New York Psychiatric Center, 652 F.3d 277, 289 (2d Cir. 2011)).

    A. Reasonable Rate

        "The reasonable hourly rate is the rate a paying client would be willing to pay,"
"bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to
litigate the case effectively."  Arbor Hill Concerned Citizens Neighborhood Association v.
County of Albany and Albany County Board of Elections, 522 F.3d 182, 190 (2d Cir. 2008).  To
determine that rate, "[c]ourts must also consider the factors set forth in Johnson v. Georgia

Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974),[1] although separate findings as to each factor are unnecessary[.]"  Montefiore Medical Center v. Local 272 Welfare Fund, 09-cv3096 (RA) (SN), 2019 WL 4565099, at *5 (S.D.N.Y. Sept. 19, 2019).  "Courts in this District have recognized that an 'attorney's customary billing rate for fee-paying clients is ordinarily the best evidence of the market rate.'"  Graziano, 2024 WL 1175143, at *2 (quoting In re Stock Exchanges Options Trading Antitrust Litigation, 99-cv-0962 (RCC), 2006 WL 3498590, at *9 (S.D.N.Y. Dec. 4, 2006)).  "Courts also 'consider the rates charged by attorneys of comparable skill, experience, and reputation in the community.'"  Thomas R. v. Hartford Life and Accident Insurance Co., 21-cv-1388 (JGK), 2025 WL 754123, at *3 (S.D.N.Y. Mar. 10, 2025) (quoting Nature's Enterprises, Inc. v. Pearson, 08-cv-8549 (JGK), 2010 WL 447377, at *9 (S.D.N.Y. Feb. 9, 2010)).  "The Second Circuit's forum rule generally requires use of the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee."  Graziano, 2024 WL 1175143, at *2 (internal quotation marks omitted) (quoting Bergerson, 652 F.3d at 290).  "The Court must be mindful to conduct a 'case-specific inquiry into the prevailing market rates,' which may 'include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district.'"  Id. (quoting Farbotko v. Clinton County of New York, 433 F.3d 204, 209 (2d Cir. 2005)).

Macalou seeks the following hourly rates for her attorneys for the hours indicated: Michael S. Hiller (Managing Partner): $895 for 54.75 hours; Jason Zakai (Partner): $600 for 0.7 hours; Paul M. Kampfer (Senior Counsel): $600 for 369.93 hours; Susan Fauls (Senior

---

[1] The Johnson factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."  Arbor Hill, 522 F.3d at 186 n.3.

Paralegal): $225 for 10.5 hours; and Conor Spangfort (Paralegal): $165 for 9.65 hours.[2]  (See Decl. of Michael S. Hiller in Support of Pl.'s Mot. ("Hiller Supp. Decl."), ECF 100 ¶¶ 10, 10 n.3, 37; Hiller Rep. Decl., ECF 114 ¶¶ 2; Hiller Rep. Decl. Ex. 8, ECF 114-1.)  In support of these rates, Macalou has submitted declarations from Hiller outlining the HPC attorneys' relevant legal experience.  (Hiller Supp. Decl., ECF 100 ¶¶ 11-35; Hiller Rep. Decl., ECF 114 ¶¶ 7-12.)  Hiller has practiced law for 32 years, including 30 years of disability insurance work, and founded HPC, which represents disabled insureds and plan beneficiaries from inception of the claim process through litigation, in 2014.  (Hiller Supp. Decl., ECF 100 ¶¶ 13, 15-16.)  Zakai has practiced law for over 15 years and while he "does not concentrate in disability cases, he handles most of the corporate and business law matters at HPC," including reviewing confidentiality agreements.  (Id. ¶ 10 n.3; Hiller Rep. Decl., ECF 114 ¶ 9.)  Kampfer is co-chair of HPC's disability practice and has over 19 years of experience working on ERISA long-term disability claims.  (Hiller Supp. Decl., ECF 100 at 11, ¶ 31.)  Fauls worked with Hiller from 1996 through her retirement in January 2023 and was "involved in virtually every disability matter and litigation [Hiller] handled during that period."  (Id. ¶ 32.)  Lastly, Spangfort graduated from Columbia University in 2023 and worked for HPC from September 2023 through November 2024.  (Id. ¶ 34.)

Macalou has also submitted an affirmation from Scott M. Riemer, an attorney with at least 30 years of ERISA litigation experience and the founding partner of the New York City-based law firm Riemer Hess LLC, who attests that Hiller's and Kampfer's requested rates are reasonable based on the rates charged in this legal community and their reputations and

---

[2] The hours listed for Hiller and Kampfer include the additional hours spent by them on the reply papers filed in connection with this motion and a voluntary 50% reduction of the hours each spent in connection with a motion to seal previously filed in this action.  (See Decl. of Michael S. Hiller in Reply and in Further Support of Pl.'s Mot. ("Hiller Rep. Decl."), ECF 114 ¶¶ 2.)

experience. (See Aff. of Scott M. Riemer ("Riemer Aff."), ECF 102 ¶¶ 3, 14-15.) Riemer provides that his hourly rate for representation in ERISA matters has been $925 since January 1, 2024, and that before that date it was $875 per hour. (Id. ¶ 11.) Riemer Hess LLC's current hourly fees are as follows: $750 for partners, $510-$600 for associates, $300-$385 for paralegals, and $250 for legal assistants. (Id. ¶ 12.) Riemer also states that he considers Hiller, whom he has known for about 21 years, "to be a peer with a comparable level of experience and expertise" and that he "is well-known and recognized as an expert in the field of disability insurance/long term disability law." (Id. ¶¶ 13-14.) He notes that he has "often sought out [Hiller's] advice and counsel on disability insurance matters." (Id. ¶ 14.) Riemer adds that he has known Kampfer, who was formerly a partner at Riemer's firm, for over 10 years and that he has over 19 years of ERISA litigation experience. (Id. ¶ 15; Hiller Supp. Decl., ECF 100 ¶ 27.) To go along with Riemer's affirmation, Macalou has submitted a declaration from Glenn R. Kantor, a California-based attorney who has spent the majority of 37 years practicing in the ERISA area, who also attests to Hiller's and Kampfer's reputation and experience. (Decl. of Glenn R. Kantor ("Kantor Decl."), ECF 103 ¶¶ 2, 11-12.) Kantor opines that "there are very few attorneys who have the skills and knowledge to handle ERISA claims and litigation successfully on a regular basis, and [Kampfer] and Hiller certainly fit that bill." (Id. ¶ 11.)

In addition, Hiller notes in his declarations that Macalou's requested rates for himself, Kampfer, and Zakai are lower than their current hourly rates of $925, $660, and $660, respectively. (Hiller Supp. Decl., ECF 100 ¶¶ 24, 31; Hiller Rep. Decl., ECF 114 ¶ 13.) Hiller further represents that all of HPC's "100+ hourly clients" pay/paid his, Kampfer's, Zakai's, Faul's, and Spangfort's current and previous hourly rates. (Hiller Supp. Decl., ECF 100 ¶¶ 24, 31, 33, 35; Hiller Rep. Decl., ECF 114 ¶ 13.)

In response to Macalou's requested hourly rates, First Unum concedes that Kampfer's rate of $600 is reasonable. (ECF 108 at 11.) However, it contends that Macalou has failed to satisfy her burden to show that Hiller's, Zakai's, Faul's, and Spangfort's hourly rates are reasonable. First Unum seeks to reduce Hiller's hourly rate from $895 to $780, Zakai's from $600 to $300, Faul's from $225 to between $180 and $200, and Spangfort's from $165 to between $80 and $100.

Several considerations weigh in favor of finding that Macalou's requested rates are reasonable. To start, all of HPC's more-than-100 clients have agreed to pay not only Hiller's, Kampfer's, and Zakai's current hourly rates, but also their lower requested rates and Faul's and Spangfort's rates that were in place while they worked on this case. (Hiller Supp. Decl., ECF 100 ¶¶ 24, 31, 33, 35; Hiller Rep. Decl., ECF 114 ¶ 13.) Moreover, both Riemer's affirmation and Kantor's declaration highlight the fact that Hiller and Kampfer are highly experienced and well-regarded practitioners in the field of ERISA litigation. (See Riemer Aff., ECF 102 ¶¶ 13-15; Kantor Decl., ECF 103 ¶ 11.) Riemer in particular, as someone who practices within this District, has comparable years of ERISA experience to Hiller, and is his firm's founding partner, provides a useful benchmark in assessing the reasonableness of Hiller's requested rate. (See Riemer Aff., ECF 102 ¶¶ 2-3.) Furthermore, the Court's review of the most recent awards in similar ERISA cases from this District, almost all of which have involved Riemer Hess LLC, indicates that the requested rates are generally in line with the rates that courts have found to be reasonable. See Thomas R., 2025 WL 754123, at *7 (awarding fees in March 2025 to Riemer at an hourly rate of $832.50, to a partner (Jennifer Hess) with approximately nine years of ERISA litigation experience at an hourly rate of $787.50, to a senior associate (Ryan McIntyre) with approximately four years of ERISA litigation experience plus

five years of other experience at an hourly rate of $540, to a senior paralegal (Hannah Cochrane) with over 10 years of ERISA experience at an hourly rate of $346.50, and to a paralegal (Jessica Carrion) with over eight years of experience in the legal field but only about two years of experience as a paralegal at an hourly rate of $279)[3]; Graziano, 2024 WL 1175143, at *2-3 (awarding fees in March 2024 to Riemer at an hourly rate of $788, to Hess at an hourly rate of $608, to McIntyre, who was then an associate, at an hourly rate of $432, and to Cochrane at an hourly rate of $315); Chung v. Provident Life and Casualty Insurance Co., 21-cv-9344 (AKH), 2024 WL 78366, at *1 (S.D.N.Y. Jan. 4, 2024) (awarding fees to Riemer at an hourly rate of $875, to Hess at an hourly rate of $675, to McIntyre at an hourly rate of $480, to Cochrane at an hourly rate of $365, and to Carrion, who was then a legal assistant, at an hourly rate of $225)[4]; Rhodes v. First Reliance Standard Life Insurance Co., 22-cv-5264 (AKH), 2023 WL 9113226, at *1 (S.D.N.Y. Dec. 27, 2023) (awarding fees to Riemer at an hourly rate of $875, to Hess at an hourly rate of $675, to McIntyre at an hourly rate of $480, to Cochrane at an hourly rate of $350, and to Carrion at an hourly rate of $225)[5].

At the same time, however, in one ERISA case within the above timeframe a court in this District awarded fees to a highly experienced lead counsel at an hourly rate noticeably lower than the rate Macalou requests for Hiller. See E.V. v. United Healthcare Oxford, 22-cv-2855 (VM), 2024 WL 3534405, at *2-3 (S.D.N.Y. July 25, 2024) (awarding fees to a lead counsel with 29 years of ERISA experience at an hourly rate of $600). Also, though

---

[3] The details of these individuals' relevant experience are drawn from the "Affirmation of Scott Riemer" and "Affirmation of Jennifer Hess" submitted in support of plaintiffs' motion for attorneys' fees and costs in Thomas R. See 21-cv-1388 (JGK), ECF 93 ¶¶ 36, 45-46, 50-51, 59, 61, ECF 92 ¶¶ 8-9.

[4] The requested hourly rates for these individuals are drawn from the "Affirmation of Scott Riemer" submitted in support of plaintiff's motion for attorneys' fees and costs in Chung, which Macalou has submitted in support of her motion. (Hiller Supp. Decl. Ex. 5, ECF 100-5 ¶¶ 3-4.)

[5] The requested hourly rates for these individuals are drawn from the "Affirmation of Scott M. Riemer" submitted in support of plaintiff's motion for attorneys' fees and costs in Rhodes, which Macalou has submitted in support of her motion. (Hiller Supp. Decl. Ex. 6, ECF 100-6 ¶¶ 3-4.)

less recent, in February 2021 a court in this District awarded fees to Hiller at an hourly rate of $675, a decrease from the $750 that he had requested.  Dimopoulou v. First Unum Life Insurance Co., 13-cv-7159 (ALC), 2021 WL 406741, at *4 (S.D.N.Y. Feb. 5, 2021).  And, in 2019, another court in this District "found that hourly rates in ERISA cases ranged from $450 to $660 for experienced partners . . . ."  Thomas R., 2025 WL 754123, at *6 (citing Montefiore, 2019 WL 4565099, at *6-7).

        In light of the above considerations, the Court will reduce Hiller's requested hourly rate from $895 to $810.  This is near the most recent rate awarded in Thomas R. to Riemer, who provides a useful benchmark, but not the highest rate of $875 awarded to him in Chung and Rhodes.  This reduction also keeps Hiller's rate from exceeding the rates found to be reasonable in other recent ERISA cases, while reflecting an apparent general increase in the rates found to be reasonable in this District in the past two years for experienced partners.  In addition, Hiller's modified rate is consistent with his experience, reputation, and the nature and caliber of the work performed here.  The Court sees no need to reduce the hourly rates that Macalou requests for Kampfer, Zakai, Fauls, and Spangfort, as they are commensurate to the rates approved in the most recent ERISA cases in this District.  First Unum concedes that Kampfer's rate of $600 is reasonable and, indeed, that rate is significantly lower than the rate of $787.50 most recently awarded in Thomas R. to Hess, who has fewer years of ERISA experience than Kampfer.  Zakai, whose requested rate is also $600, is a partner with a comparable number of years of legal experience to Kampfer.  While Zakai is not an ERISA practitioner, his 0.7 hours of billed time were dedicated to reviewing and revising a confidentiality stipulation, which is directly relevant to his legal experience.  (See Hiller Supp. Decl., ECF 100 ¶ 10 n.3.)  Fauls's and Spangfort's requested rates of $225 and $165, respectfully, are in line with the rates most

recently awarded to Riemer Hess LLC's senior and junior paralegals and reflect their individual levels of experience.

Accordingly, the Court approves the following reasonable hourly rates: Hiller at $810, Kampfer at $600, Zakai at $600, Fauls at $225, and Spangfort at $165.

B. Reasonable Number of Hours Expended

"In order to calculate the reasonable hours expended, the prevailing party's fee application must be supported by contemporaneous time records, affidavits, and other materials." Graziano, 2024 WL 1175143, at *4 (quoting McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96 (2d Cir. 2006)). "Courts evaluate contemporaneous records for reasonableness . . . considering [their] own familiarity with the demands of the case as well as the evidentiary submissions of the parties[.]" Id. (citation omitted). "Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded . . . and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." Thomas R., 2025 WL 754123, at *4 (quoting Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir. 1998)). In reducing the total number of hours awarded, "[t]he district court is not obligated to undertake a line-by-line review of [plaintiff's] fee application . . . ." E.V., 2024 WL 3534405, at *3 (quoting Marion S. Mishkin Law Office v. Lopalo, 767 F.3d 144, 150 (2d Cir. 2014)).

HPC billed 445.53 hours to this matter. Based on the Court's review of HPC's time entries, a percentage reduction is warranted to trim excessive hours. (See Hiller Supp. Decl. Ex. 1, ECF 100-1; Hiller Rep. Decl. Ex. 8, ECF 114-1.)

To start, two of First Unum's specific objections to the time billed by HPC are valid.  HPC spent a total of 40.65 hours on Macalou's 15-page Trial Brief in Reply and Further Support (ECF 91).  (Hiller Supp. Decl., ECF 100 ¶ 37.)  This came after HPC had logged over 110 hours in connection with Macalou's 30-page Trial Brief (ECF 84) and 28-page Trial Brief in Opposition (ECF 89).  (See Hiller Supp. Decl., ECF 100 ¶ 37.)  The Court sees no reason why Hiller and Kampfer, who did substantially all of the work on all three briefs, would have needed to spend so much time on the reply given their expertise and familiarity with the relevant facts and law.  See Levitian v. Sun Life and Health Insurance Co., 09-cv-2965 (GBD) (FM), 2013 WL 3829623, at *10 (S.D.N.Y. July 24, 2013), report and recommendation adopted, 2013 WL 4399026 (S.D.N.Y. Aug. 15, 2013) (finding that over 34 hours spent drafting ten-page reply brief in support of summary judgment motion was excessive in light of attorneys' experience and previous briefing).  In addition, First Unum's observation that on January 19, 2024 paralegal Spangfort billed a total of six hours in part for "Exhibit preparation and arrangement" in connection with Macalou's Trial Brief, yet the brief as filed at that time did not include any exhibits (ECF 51), is well taken.  (See Hiller Supp. Decl. Ex. 1, ECF 100-1 at 12.)

To go along with these specific objections by First Unum, "a failure to delegate work to junior, less expensive attorneys may be grounds for reducing an award of attorney's fees."  E.V., 2024 WL 3534405, at *5 (quoting Dimopoulou, 2017 WL 464430, at *3).  That is the case here.  Hiller emphasizes that he delegated "approximately 88% of the time in the instant action to employees whose rates were lower than mine."  (Hiller Rep. Decl., ECF 114 ¶ 5 (emphasis omitted).)  Indeed, the bulk of the work in this action was done by Kampfer, who billed 369.93 hours at an hourly rate of $600.  But Kampfer's billing included tasks like legal research, discovery, and preparing initial drafts of case documents that, in the Court's

experience, would have been suitable assignments for attorneys more junior, and considerably

less expensive, than Kampfer.  (See Hiller Supp. Decl., ECF 100 ¶ 37; Hiller Supp. Decl. Ex. 1,

ECF 100-1.)  In fact, HPC "no charged" about three hours of time spent on this matter by two

associates with hourly rates of $500 and $375.  (Hiller Supp. Decl., ECF 100 ¶ 10 n.3.)  HPC's

lack of further delegation to its associates warrants a percentage reduction.

First Unum's remaining objections are overstated.  HPC billed 33.55 hours (or

34.05 hours by First Unum's calculation) in connection with Macalou's efforts to seal the entire

administrative record in this case, totaling over 2,000 pages, to protect her medically sensitive

information.  (Id. ¶ 37.)  According to First Unum, all of this time should be eliminated because

Macalou was unsuccessful in persuading the Court to seal the entire administrative record upon

her initial motion and after filing a motion for reconsideration.  (See ECF 72; ECF 78.)  While

"counsel may be denied compensation for work done . . . on motions that were unreasonable or

had little chance of success," "a court should not disallow fees for every motion that a prevailing

party did not win."  Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 538 (S.D.N.Y. 2008) (citations

omitted).  Here, Macalou's efforts were at least partially successful in that the Court allowed for

narrow redactions to the administrative record of medical information unrelated to the case and

other personal information.  (See ECF 72 at 2.)  The motion for reconsideration, while

unsuccessful, was also filed with the Court's permission.  (See ECF 75.)  And to the extent there

was any lack of serious merit to Macalou's efforts, it is sufficiently accounted for by her

voluntary reduction by 50%, or 16.8 hours, to the time originally billed by HPC for the motion to

seal, which is already reflected in her fees request.  (Hiller Rep. Decl., ECF 114 ¶ 2.)  The Court

has also compared the 44-page appeal letter that Kampfer submitted to First Unum on June 30,

2022, Macalou's Complaint, and Macalou's Proposed Findings of Fact and does not find that a

reduction of hours expended on the latter two documents is warranted based on First Unum's contention that they overlap in content significantly with one another and the letter.  (See Stipulated Administrative Record, ECF 80-6 and ECF 80-7 at 933-77; ECF 1; ECF 83.).[6] Among other things, additional work was needed to organize, supplement, and revise each of the two documents to serve their particular purposes in this litigation and, in the case of the Proposed Findings of Fact, to reflect the lengthy administrative record in this case.  Relatedly, it was reasonable and simply good practice that paralegal Faul spent 6.2 hours in total reviewing, proofreading, and revising the Complaint at various stages of the drafting process.  (See Hiller Supp. Decl. Ex. 1, ECF 100-1 at 2-3.)

      Notwithstanding First Unum's objection as to vagueness in HPC's time entries, the Court concludes that the description for most entries is clear and enables the Court to discern whether the time spent on each task was reasonable in light of the demands of this matter.  See Montefiore, 2019 WL 4565099, at *9 (quoting Handschu v. Special Services Division, 727 F. Supp. 2d 239, 250 (S.D.N.Y. 2010)) ("A billing entry is vague if it 'lacks sufficient specificity for the Court to assess the reasonableness of the amount charged in relation to the work performed.'")  First Unum takes issue specifically with certain of Kampfer's descriptions of his legal research done in connection with the trial briefs submitted in this case, such as "Begin research re: Trial Brief" and "Continue research re: Opposition Trial Brief and begin draft of Opposition Trial Brief."  (See Hiller Supp. Decl. Ex. 1, ECF 100-1 at 11-16.)  While these entries do not identify the precise legal issues that Kampfer was researching, the Court is sufficiently familiar with the various issues addressed in these submissions so as to be reasonably confident that the time billed was spent productively.  First Unum also argues that several of

---

[6] The Court's citation to the administrative record is to the bates stamp located at the bottom right-hand corner of each page.

these same entries constitute impermissible block billing.  The Court disagrees.  The majority of

the block-billed entries were for fewer than five hours or separately noted the hours spent on

discrete tasks: "Finish draft of Reply Trial Brief (2.0).  Research re: same (1.0).  Discussions

with M. Hiller re: same (.3).  Telephone conference with Opp. Counsel re: Sealing Order (.1).

Multiple emails with ECF Helpdesk re: sealing documents (.4)."  (Id. at 14.)  As other courts

have recognized, block billing is permissible when a court is still able to conduct a meaningful

review and is particularly problematic when "large amounts of time (e.g., five hours or more) are

block billed."  Montefiore, 2019 WL 4565099, at *10 (quoting Beastie Boys v. Monster Energy

Co., 112 F. Supp. 3d 31, 53 (S.D.N.Y. 2015)).  The few other instances where block-billed

entries do exceed five hours largely "encompass[] a series of related tasks" like researching and

drafting and "sufficiently enumerate[] the work completed" such that no reduction is warranted.

Id. (quoting Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona, 188 F.

Supp. 3d 333, 343 (S.D.N.Y. 2016)).  Lastly, First Unum's complaint that Kampfer billed for

administrative tasks that should have been done by a paralegal relates to de minimis entries, one

of which appears to have mistakenly noted that he devoted two hours to reviewing and editing

tables of contents and authorities when in fact only .2 hours were billed.  (See Hiller Supp. Decl.

Ex. 1, ECF 100-1 at 12-14; Hiller Rep. Decl., ECF 114 ¶ 21.)

        In light of the concerns outlined above, especially HPC's failure to appropriately

delegate, the Court concludes that an across-the-board reduction of 15% to the number of hours

expended is warranted.  The Court is mindful that HPC voluntarily "no charged" 8.15 hours

totaling $5,681.75 and did not use Hiller's and Kampfer's higher hourly rates for 2025 of $925

and $660, respectively, in connection with this fees request, which HPC states equates to a

voluntary reduction of $28,654.25, or "a little more than 10% of HPC's total time," that

"accounts for any inadvertent billing redundancies and inefficiency of time spent on this matter."
(See Hiller Supp. Decl., ECF 100 ¶¶ 38-39.)  Putting aside the fact that it is ultimately up to the
Court to determine what constitutes a reasonable hourly rate, HPC's voluntary reduction is
insufficient to address the above issues, and an additional 15% reduction is appropriate.

Therefore, attorneys' fees will be awarded as follows: Hiller: $810 per hour for
46.54 hours; Zakai: $600 per hour for 0.6 hours; Kampfer: $600 per hour for 314.44 hours;
Fauls: $225 per hour for 8.93 hours; and Spangfort: $165 per hour for 8.20 hours.  This totals to
a reasonable fee award of $230,083.65.

Costs

Macalou seeks $6,660.29 in costs.  These costs consist of $402 for filing the
Complaint, $10.97 for a FedEx mailing to the Court, $552.50 for serving the Complaint, $3.80 in
Pacer searches, and $816.02 for legal research performed on LexisNexis, totaling $1,785.29, as
well as $4,875 in private mediation fees that Macalou paid out of pocket.  (See Hiller Supp.
Decl. Ex. 1, ECF 100-1 at 20; Hiller Supp. Decl. Ex. 7, ECF 100-7.)  First Unum does not object
to Macalou being awarded costs for the private mediation, the filing of her Complaint, the FedEx
mailing, and Pacer searches.  (ECF 108 at 25.)  First Unum initially objected to reimbursement
of the costs of service of process and Lexis research because Macalou failed to submit
documentation to verify or substantiate these amounts, but she has since rectified that issue.  (See
Hiller Rep. Decl. Ex. 9, ECF 114-2; Hiller Rep. Decl. Ex. 10, ECF 114-3; Affidavit of Maria
Rizzo, ECF 112.)  Accordingly, the Court grants the request for payment of costs of $6,660.29.

Prejudgment Interest

Macalou and First Unum dispute the rate of prejudgment interest that the Court
should apply in this case.  On one hand, Macalou contends that she is entitled to prejudgment

interest at a rate of 21.8%, totaling $345,935.17.  On the other hand, First Unum urges the Court
to apply the New York statutory simple interest rate of 9% for a total sum of $139,497.54.  (ECF
108 at 27-29.)

"There is no federal statute that purports to control the rate of prejudgment
interest." Jones v. UNUM Life Insurance Co. of America, 223 F.3d 130, 139 (2d Cir. 2000).
Instead, in choosing the applicable rate, a court weighs "(i) the need to fully compensate the
wronged party for actual damages suffered, (ii) . . . fairness and the relative equities of the award,
(iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are
deemed relevant by the court." Frommert v. Conkright, 913 F.3d 101, 109 (2d Cir. 2019)
(quoting Jones, 223 F.3d at 139).  The particular rate chosen "must not result in over-
compensation of the plaintiff." Id. (quoting Wickham Contracting Co. v. Local Union No. 3,
IBEW, 955 F.2d 831, 834 (2d Cir. 1992)).

Macalou's requested rate of 21.8% is far outside the norm in this District.  In
ERISA cases, courts most commonly apply the federal prime rate, which in recent years has
peaked at 8.5%,[7] or the 9% rate under N.Y. C.P.L.R. § 5004. See, e.g., E.V., 2024 WL 3534405,
at *5-6 (applying federal prime rate of 8.5%); Chung, 2024 WL 78366, at *1 (applying New
York statutory interest rate of 9%).  Indeed, Macalou recognizes "that there are no reported
ERISA Long Term Disability cases in New York where a claimant was awarded in excess of the
9% New York State statutory interest rate . . . ."  (ECF 113 at 14.)  She nonetheless contends that
a rate of 21.8% is warranted to prevent First Unum from profiting from its withholding of her
benefits from August 2021 through December 2024.  Citing to financial statements published by
First Unum, she notes that the company's "Adjusted Operating Return on Equity" for its U.S.-

---

[7] https://www.jpmorganchase.com/legal/historical-prime-rate (last accessed Aug. 27, 2025).

based business segment averaged 21.8% during that period.  (ECF 105 at 21.)  In further support

of her requested rate, Macalou has submitted an affidavit outlining the loans and credit card debt

she was forced to take on to pay for her necessary living expenses absent the receipt of her

disability benefits.  (See Affidavit of Anticia Macalou, ECF 101 ¶¶ 3-4.)  Macalou states that she

took a "Home Equity Line of Credit" in the amount of $139,414 with an interest rate of 8.5%,

withdrew a total of $128,619 from her Individual Retirement Account with an early withdrawal

penalty of 10%, charged approximately $114,897 to an American Express credit card with an

interest rate of 28.24%, and charged another $36,045 to a Delta Reserve American Express credit

card with an interest rate of 29.99%.  (Id. ¶ 3.)  She also observes that the withdrawals from her

retirement account came at a time during which the S&P 500 increased at a rate of 34.4%.  (Id. ¶

4.)

     The Court concludes that New York's statutory simple interest rate of 9% "strikes

an appropriate balance" and "fairly compensate[s]" Macalou without unduly penalizing First

Unum.  E.V., 2024 WL 3534405, at *6 (quoting Frommert, 913 F.3d at 110.)  The Court is not

convinced that First Unum's average "Adjusted Operating Return on Equity" fairly captures the

direct financial benefit that the company derived from its withholding of Macalou's long-term

disability benefits.  See Spears v. Liberty Life Assurance Co. of Boston, 3:11-cv-1807 (VLB),

2020 WL 2404973, at *6 (D. Conn. May 12, 2020) (noting that a company's rate of return

"includes a variety of revenue sources, intercompany transactions, and tax consequences" and

therefore may not be "reflective of the benefit . . . derived due to the delayed [benefits] payment

or otherwise representative of the time value of money or [the plaintiff's] likely investment

return as an individual investor").  Even if it did, principles of fairness would still weigh heavily

against using such a high rate.  There is no reason to believe, for instance, that First Unum's

decision to deny Macalou's benefits was malicious or wholly unsupported by the evidence in the record. Furthermore, the Court's adoption of a 21.8% rate, which would be wholly out of step with the rates that other courts in this District have applied, would not serve ERISA's remedial purposes, as it would "provide a windfall to [Macalou] and would serve to punish [First Unum], in contravention of the compensatory goal of ERISA." Cohen v. Life Insurance Co. of North America, 17-cv-9270 (JPO), 2019 WL 1785095, at *5 (S.D.N.Y. Apr. 24, 2019) (quoting Levy v. Young Adult Institute, Inc., 13-cv-2861 (JPO), 2017 WL 1929505, at *4 (S.D.N.Y. May 9, 2017)). Nonetheless, the Court considers Macalou's borrowing against her home's equity, high interest credit card debt, and early retirement withdrawal to be indicative of the actual damages that she suffered during the period she was denied benefits, which merits compensation here. As First Unum concedes, application of New York's statutory simple interest rate of 9% is reasonable and appropriate in this case.

Macalou and First Unum agree that the Court should calculate the total amount that First Unum owes Macalou in prejudgment interest with reference to a date midway through First Unum's delinquency period, which the parties also agree is the midpoint between August 20, 2021 (the date benefits were first due) and December 18, 2024 (the date benefits were paid), or 609 days. (ECF 108 at 28-29; Decl. of Gisela Eubanks ("Eubanks Decl."), ECF 108-4 ¶ 5; ECF 113 at 14.) The Court adopts this approach. See, e.g., Cohen, 2019 WL 1785095, at *5. Multiplying the amount First Unum owed ($928,954.90) by the 9% simple rate of prejudgment interest, and dividing that amount ($83,605.94) by 365, the daily rate is $229.06. (Eubanks Decl., ECF 108-4 ¶ 6.) Accordingly, Macalou is owed $139,497.54 ($229.06 x 609) in prejudgment interest. (Id.)

CONCLUSION

        For these reasons, the Court GRANTS Macalou's motion in the amounts of $230,083.65 in attorneys' fees, $6,660.29 in costs, and $139,497.54 in prejudgment interest. The Clerk of Court is respectfully directed to terminate the pending motion at ECF 99.

        SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
      August 27, 2025